# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs December 16, 2008

## STATE OF TENNESSEE v. JESSE DANIEL WRIGHT

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S52,898     Robert H. Montgomery, Jr., Judge**

---

**No. E2008-00522-CCA-R3-CD - Filed December 1, 2009**

---

Following a jury trial, Defendant, Jesse Daniel Wright, was convicted of driving under the influence, a Class A misdemeanor, possession of a Schedule III narcotic, a Class A misdemeanor, and running a stop sign, a Class C misdemeanor. Following a sentencing hearing, Defendant was sentenced to concurrent sentences of eleven months, twenty-nine days for each Class A misdemeanor conviction, and thirty days for his Class C misdemeanor conviction, for an effective sentence of eleven months, twenty-nine days, all of which was suspended after serving ten days in confinement. On appeal, Defendant argues that the evidence was insufficient to support his conviction of driving under the influence of an intoxicant. After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Stephen M. Wallace, District Public Defender; and Richard A. Tate, Assistant Public Defender, Blountville, Tennessee, for the appellant, Jesse Daniel Wright.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Brandon Haren, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

### I. Background

Officer Melissa Marlowe with the Sullivan County Sheriff's Office testified that she was patrolling the White Top Road area of Sullivan County at approximately 10:47 p.m. on October 26, 2005. Officer Marlowe began following Defendant's vehicle as he drove down White Top Road toward Pleasant Grove Road. Before he reached Pleasant Grove Road, Defendant's vehicle crossed

the double yellow lines separating the lanes of traffic approximately three times. Defendant turned left onto Pleasant Grove Road without stopping at the stop sign.

Officer Marlowe activated her patrol car's emergency equipment, and Defendant turned into Bear Drive and stopped. Officer Marlowe identified Defendant at trial as the driver of the vehicle. Officer Marlowe said that when she asked Defendant for his driver's license, "he was real slow in getting it and kind of fumbled with it." Officer Marlowe stated that she detected the odor of alcohol while she was obtaining Defendant's information. Officer Marlowe said Defendant was driving a Ford pick-up truck, and he had to hold on to the truck's side while he exited the vehicle. Officer Marlowe observed several empty cans of beer in the truck's bed. Officer Marlowe stated that Defendant appeared to be intoxicated. Officer Marlowe said that Defendant told her that he did not have any physical disabilities.

Officer Marlowe asked Defendant to perform the "one leg stand test" on what she described as a "flat asphalt surface." She instructed Defendant to keep his arms by his side, raise one leg, and count from one thousand to one thousand thirty. Officer Marlowe said that Defendant raised his arms and swayed during the entire test. Defendant put his foot down once while counting from one to ten. The "walk and turn" test requires an individual to walk a certain number of paces "heel to toe" with their arms held down. Officer Marlowe said Defendant performed the test with his arms held up, and he did not touch his heel to the toe of his other foot on nine steps. Officer Marlowe instructed Defendant to stand with his feet together, arms stretched out to his side, tilt his head back and close his eyes. Officer Marlowe said that each time she asked Defendant to touch his nose with a particular hand, that he used the other hand and missed his nose on each try. When asked to recite the alphabet, Officer Marlowe said that Defendant sang "LMNOP" rather than saying "L, M, N, O, P" and concluded with "R, R, X, Y, Z." Defendant was also unable to touch the tips of his fingers to his thumb while counting "1, 2, 3, 4, 4, 3, 2, 1." Officer Marlowe stated that based on her experience, Defendant failed all five tests.

Defendant acknowledged that he had been drinking at a friend's house, but he did not state how much he had to drink. Officer Marlowe described Defendant as "sleepy" and "carefree" during the tests, and appeared not to care if he correctly completed the tests. Officer Marlowe informed Defendant he was under arrest for driving under the influence. During a search incident to the arrest, she found five green pills which Defendant told her were Lortab pills. Officer Marlowe stated that the pills were not in a prescription bottle but were loose in Defendant's pockets.

Defendant agreed to take a blood test so Officer Marlowe transported him to a hospital in Bristol. She read the implied consent form to Defendant, and Defendant signed the form. Defendant then provided blood and urine samples which were submitted to the Tennessee Bureau of Investigation (T.B.I.) for analysis along with the five green pills. Officer Marlowe stated that Defendant's blood was drawn at 12:15 a.m. on October 27, 2005.

On cross-examination, Officer Marlowe stated that she followed Defendant for approximately one to one and one-half miles before initiating the stop. She said that Defendant's

vehicle did not cross the fog line on the right side of the traffic lane during this time. Officer Marlowe acknowledged that she noted Defendant's response to her emergency equipment as "immediate" in her report. Officer Marlowe also noted in her report that Defendant's attire was orderly and that he was cooperative. She said that she did not find any alcohol containers inside Defendant's truck cab and did not observe any unopened containers in the truck's bed.

Special Agent Melanie Carlisle, a toxicology analyst with the T.B.I.'s forensic crime lab, testified that she tested Defendant's blood sample and his ethyl blood alcohol level was 0.03 percent.

Special Agent Margaret Massengill, a toxicology analyst with the T.B.I.'s forensic crime lab, testified that she tested Defendant's urine and blood samples for drugs. Special Agent Massengill said that her tests revealed the presence of an inactive marijuana metabolite in Defendant's blood sample, and dihydrocodeine, citalopram, dihydrocodeinone, and an inactive marijuana metabolite in Defendant's urine sample. Special Agent Massengill stated that she could not determine when an individual last used marijuana based on the presence of an inactive metabolite in the individual's blood. An inactive metabolite can be detected through a blood analysis for between eighteen and twenty-four hours after use. Special Agent Massengill said that a drug or an inactive metabolite can be detected in an individual's urine for a longer period of time.

On cross-examination, Special Agent Massengill explained that dihydrocodeine can be detected in an individual's urine longer than in the blood, and that the drug would not be detectable in a blood sample after approximately twenty-four hours. Special Agent Massengill said citalopram would be detectible in a blood sample for approximately forty-eight hours and that dihydrocodeinone would be detectable for approximately sixteen to twenty-four hours.

Special Agent Sharon Nelson with the T.B.I.'s forensic crime lab testified that the five pills found on Defendant were dihydrocodeinone, a Schedule III drug, which was marketed under the trade name, "Lortab."

Dr. Kenneth Ferslew was qualified as an expert in the field of forensic toxicology. Dr. Ferslew testified that he reviewed the T.B.I.'s toxicology reports, the Sullivan County Sheriff's Office offense report form, the affidavit of complaint, and Officer Marlowe's statement of the offense to determine if drugs were present in Defendant's system which would affect his psychomotor performance and whether Defendant was under the influence of drugs or alcohol at the time his vehicle was stopped. Dr. Ferslew said that his analysis reflected an integrated approach utilizing the arresting officer's observation of driving infractions, the performance on field sobriety tests, and the chemical analysis of blood and urine.

Dr. Ferslew stated that the results of the field sobriety tests revealed indicators that Defendant had some sort of impairment in his ability to follow instruction and coordinate his motor functions. Dr. Ferslew said that the field sobriety tests administered by Officer Marlowe were standardized by the National Highway Transportation Safety Administration and reflected an accuracy in the eighty to ninety percentile range. Based on the presence of a blood alcohol level of 0.03 percent at

12:15 a.m., Dr. Ferslew stated that the maximum blood alcohol level at the time of the stop approximately one and one-half hours earlier would have been 0.056 percent. Dr. Ferslew said that marijuana can make the user feel calm, even lackadaisical. Dr. Ferslew stated, however, that in order to determine if Defendant was exhibiting the characteristics of marijuana use, he would have to know when Defendant last used the drug. Dr. Ferslew said that he could not make a prediction of Defendant's last use of marijuana without the measurement of a delta 9 THC level, the active constituent of marijuana.

Dr. Ferslew concluded, however, that under the three-pronged approach, the information concerning Defendant's case revealed the mis-operation of his vehicle, psychomotor impairment as revealed by the field sobriety tests, and the presence of some drugs in his system "that could produce the effects noted."

On cross-examination, Dr. Ferslew said that Officer Marlowe's report did not indicate how long Defendant was under observation before she initiated the traffic stop. Dr. Ferslew acknowledged that it was not unusual for a driver to cross the middle line when driving late at night with no on-coming traffic. Dr. Ferslew stated that an individual would be more impaired by a combination of ingestion of alcohol and marijuana than by either drug alone.

The State rested its case-in-chief, and Defendant put on his defense. Ms. Shawna Garrett first testified that Defendant left her home at October 26, 2005, at approximately 6:00 p.m. Ms. Garrett then stated that she did not look at the clock when Defendant left and said that he may have left as late as 8:00 p.m.

Defendant testified on his own behalf. Defendant said that on October 26, 2005, he drank one 16-ounce bottle of beer between 4:00 p.m. and 5:00 p.m. Defendant explained that the beer cans in the bed of his truck belonged to other employees at his company which he was going to recycle. Defendant said that he stopped his vehicle as soon as he saw the blue lights on the patrol car, that he obeyed all of Officer Marlowe's instructions concerning the field sobriety tests, and that he consented to giving blood and urine samples. Defendant stated that he did not feel that he was under the influence of drugs or alcohol at the time of the traffic stop.

On cross-examination, Defendant said that he last used marijuana approximately forty-eight hours before the traffic stop. Defendant denied that he ran a stop sign on the night of the offense, and he stated that he did not feel that he was "having a little trouble standing on [his] own."

## II. Sufficiency of the Evidence

On appeal, Defendant argues that the evidence was insufficient to support his conviction of driving under the influence. Defendant points out his blood alcohol level was 0.03 percent and that the marijuana metabolites in his blood and urine samples were inactive.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced on appeal with a presumption of guilt. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The Defendant was convicted under Tennessee Code Annotated section 55-10-401(a)(1) which makes it unlawful for a "person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state . . . while: (1) under the influence of any intoxicant. . . ." T.C.A. § 55-10-401(a)(1).

As Defendant contends on appeal, his blood alcohol level was below the statutory .08 percent level giving rise to a legal inference of intoxication. See id. § 55-10-401(a)(2). Nonetheless, a person does not have to have a blood alcohol content of 0.08 percent or any drugs in his system in order to be found guilty of DUI pursuant to section 55-10-401(a)(1). See e.g., State v. Sanford Lee Parker, No. E2006-02412-CCA-R3-CD, 2008 WL 3843845, at *3 (Tenn. Crim. App., at Knoxville, Aug. 19, 2008), no perm. to appeal filed; State v. Richard Steven McWhorter, No. M2007-01803-CCA-R3-CD, 2008 WL 2938044, at *4 (Tenn. Crim. App., at Nashville, July 31, 2008), no perm. to appeal filed. All of the evidence must be considered, including a defendant's failure to perform field sobriety tests and the police officer's observation of driving infractions by the defendant.

Viewing the evidence in a light most favorable to the State, Officer Marlowe testified that she observed Defendant swerve his vehicle three times over the yellow center lines of the road. Defendant approached an intersection and turned left without stopping at the stop sign. Officer Marlowe stated that she detected the odor of alcohol when she approached Defendant and that Defendant needed support when he exited his vehicle. Officer Marlowe said that Defendant failed all five field sobriety tests. Defendant told Officer Marlowe that he did not have any physical disabilities which would impair his ability to perform the tests. Based on our review, we conclude that a rational trier of fact could find beyond a reasonable doubt that Defendant was under the influence of an intoxicant at the time of the traffic stop. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE